UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANCARLOS M., <br><br>   Plaintiff, <br><br> v. <br><br> ANDREW SAUL, *Commissioner of Social Security* <br><br>   Defendant. | Case No.:  20cv1061-MDD <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT** <br><br> [ECF Nos. 15, 16]. |

Sancarlos M. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final administrative decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for a period of disability and disability insurance benefits under Title II of the Social Security Act ("Act").  (AR at 15, 168-176).[1]  For the reasons expressed herein, the Court **GRANTS** Plaintiff's motion for summary judgment [ECF No. 15] and **DENIES** the Commissioner's cross

---

[1] "AR" refers to the Certified Administrative Record filed on November 19, 2020.  (ECF No. 11).

motion for summary judgment [ECF No. 16].

## I. BACKGROUND

Plaintiff was born January 3, 1959. (AR at 24). On the date last insured, Plaintiff was 57 years old, which defined him as a person of advanced age. (*Id.*).

### A. Procedural History

On January 9, 2017, Plaintiff protectively filed an application for a period of disability and disability insurance benefits under Title II of the Act, alleging a disability beginning on January 1, 2012. (AR at 15). Plaintiff later amended his alleged onset date to January 1, 2016. (*Id.*). After his application was denied initially and upon reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). (*Id.*). An administrative hearing was held on July 25, 2017. (AR at 33-69). Plaintiff appeared and was represented by his attorney, Donald Buchanan. (*See id.*). Testimony was taken from Plaintiff and Connie Guillory, an impartial vocational expert ("VE"). (*Id.*). On February 11, 2019, the ALJ issued a decision denying Plaintiff's claim for a period of disability and disability insurance benefits. (AR at 15-26).

On April 4, 2019, Plaintiff sought review with the Appeals Council. (*See* AR at 5). On April 8, 2020, the Appeals Council denied Plaintiff's request for review and declared the ALJ's decision to be the final decision of the Commissioner in Plaintiff's case. (AR at 1). This timely civil action followed.

## II. DISCUSSION

### A. Legal Standard

Sections 405(g) and 1383(c)(3) of the Social Security Act allow unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. 42 U.S.C. §§ 405(g), 1383(c)(3). The scope of judicial

review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error. *Id.*; *see also Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1993 (9th Cir. 2004).

Substantial evidence "is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Courts look "to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id.* "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence, [the Supreme Court] has said, is 'more than a mere scintilla.' It means—and only means—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Ninth Circuit explains that substantial evidence is "more than a mere scintilla but may be less than a preponderance." *Molina v. Astrue*, 674 F.3d 1104, 1110-11 (9th Cir. 2012) (quotation marks and citations omitted), *superseded by regulation on other grounds*.

An ALJ's decision is reversed only if it "was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." *Id.* "To determine whether substantial evidence supports the ALJ's determination, [the Court] must assess the entire record, weighing the evidence both supporting and detracting from the agency's conclusion." *Ahearn v. Saul,* No. 3:18-cv-05699-MLP, 2021 U.S. App. LEXIS 4472, at *5 (9th Cir. Feb. 17, 2021) (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The Court "may not reweigh the evidence or substitute [it's] judgment for that of the ALJ." *Id.* "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When

the evidence can rationally be interpreted in more than one way, the court must uphold the [ALJ's] decision." *Mayes*, 276 F.3d at 459.

Section 405(g) permits a court to enter a judgment affirming, modifying or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social Security Administration for further proceedings. *Id.*

### B. Summary of the ALJ's Findings

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. *See* C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from his amended alleged onset date of January 1, 2016 through his date last insured of December 31, 2016. (AR at 17).

At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine (status post-2016 anterior cervical fusion and 2018 cervical laminectomy), and left hand interosseous function loss. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in the Commissioner's Listing of Impairments. (AR at 21) (citing 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)).

Next, after considering the entire record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with the following limitations:

> He has the ability to carry ten pounds occasionally and also ten pounds frequently. He could stand or walk up to 6 hours in an 8 hour workday and sit for up to 6 hours in an 8 hour workday, but would require the flexibility to shift position between sitting and

standing for up to 10 minutes each hour, in addition to normal breaks, to ease discomfort while remaining on task. The claimant can occasionally climb ramps or stairs but cannot climb ropes, ladder or scaffolds. The claimant is able to perform tasks regarding balancing, stooping, crouching, crawling, or kneeling on an occasional basis. Regarding dexterous tasks, the claimant is able to handle, finger or feel with the left upper extremity occasionally and is able to handle, finger or feel with the right upper extremity frequently. With respect to reaching tasks, the claimant is able to reach with the left upper extremity occasionally and with the right upper extremity frequently.

(AR at 21-22).

The ALJ said that his RFC assessment was based on all the evidence and the extent to which Plaintiff's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. (AR at 22). The ALJ also stated that he considered the opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527. (*Id.*).

The ALJ then proceeded to step four of the sequential evaluation process. He found Plaintiff was unable to perform his past relevant work. (AR at 23). The ALJ found that Plaintiff acquired the following work skills from past relevant work: resolve customer complaints; assist customers with finding merchandise, with service issues, plan and prepare work schedules, paper work, and financial documents; supervise employees, prepare, record and operate daily transactions, and handle orders and returns. (AR at 24).

For the purposes of his step five determination, the ALJ accepted the testimony of VE Connie Guillory. The ALJ determined that Plaintiff could perform jobs identified by the VE which exist in significant numbers in the national economy. For example, service clerk (DOT 221.367-070); information clerk (DOT 237.367-022); and customer complaint clerk (DOT 241.367-014). (AR at 25).

### C. Issues in Dispute

The issues in dispute in this case are: (1) whether the ALJ properly considered Plaintiff's bowel and bladder incontinence; and (2) whether the ALJ properly addressed Plaintiff's transferrable skills.

### 1. Incontinence

Plaintiff argues the ALJ's decision to not include bowel and bladder incontinence as a vocational limitation is not supported by substantial evidence. (ECF No. 15-1 at 13-18). Specifically, he contends the ALJ was required by Social Security Ruling 15-1p to consider incontinence as a vocational limitation and that the ALJ neither considered the entire medical record nor Plaintiff's statements regarding incontinence.[2] (*Id.*). Defendant counters that substantial evidence supports the ALJ's decision because there is little evidence of incontinence during the relevant period, which here is January 1, 2016 to December 31, 2016. (ECF No. 16 at 5).

As an initial matter, the Court considers the entire objective medical record regarding Plaintiff's incontinence and not just those records in 2016. First, the ALJ considered at least one medical evaluation in 2017. (AR at 22). Second, it is well-settled that medical reports "containing observations made after the period of disability are relevant to assess the claimant's disability." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988) (citing *Kemp v. Weinberger*, 522 F.2d 967, 969 (9th Cir. 1975)). The Ninth Circuit has specifically held that "medical evaluations made after the expiration of a

---

[2] Plaintiff argues the ALJ failed to provide sufficient reasons for rejecting Dr. Deckey's opinion and discrediting Plaintiff's testimony. (ECF No. 15-1 at 13-18). However, the ALJ did not consider opinion evidence by Dr. Deckey and did not discredit Plaintiff's testimony regarding incontinence. (S*ee* AR at 22-23). Accordingly, the Court construes Plaintiff's argument as a lack of substantial evidence.

claimant's insured status are relevant to an evaluation of the pre-expiration condition." *Id.*

Plaintiff first argues the ALJ failed to address incontinence as a vocational limitation required by Social Security Ruling 15-1p. (ECF No. 15-1 at 13-15). Social Security Ruling 15-1p outlines the proper process for analyzing Interstitial Cystitis claims. SSR 15-1p, 2015 SSR LEXIS 1. As noted by Defendant, Plaintiff does not have Interstitial Cystitis. (ECF No. 16 at 6). Plaintiff contends Social Security Ruling 15-1p is relevant to incontinence because incontinence is the main vocational limitation of Interstitial Cystitis. (ECF No. 17 at 6). Plaintiff does not cite any legal authority to support his position that Social Security Ruling 15-1p is relevant to any a medically determinable impairment other than Interstitial Cystitis. (S*ee* ECF No. 15-1 at 13-15; ECF No. 17 at 6). The Court is also unaware of any legal support for this argument. Accordingly, the Court finds that the ALJ was not required by Social Security Ruling 15-1p to consider incontinence not caused by Interstitial Cystitis as a vocational limitation.

Next, Plaintiff argues the ALJ's decision to not include incontinence as a vocational limitation is not supported by substantial evidence. In 2016, the relevant time period, Plaintiff complained of bowel and bladder issues three times. On July 31, 2016, Plaintiff presented to Dr. Jin Li with "bowel and bladder urgency." (AR at 289). On August 2, 2016, Dr. Deckey noted that Plaintiff was having "bowel and bladder incontinence 3 times per week" and suggested that surgery may resolve those problems. (AR at 276, 327). Plaintiff underwent a C3 to C7 anterior cervical discectomy and fusion with allograft plate fixation on August 24, 2016, for cervical myeloradiculopathy. (*See* AR at 370). On October 6, 2016, Dr. Teacher noted that Plaintiff "still ha[d] some occasional urinary incontinence" following his anterior cervical

discectomy and fusion from C3 to C7.  (AR at 264).

Medical evaluations in 2017 and 2018 illustrate the ongoing nature of Plaintiff's incontinence issues.  On February 16, 2017, Plaintiff reported "that he continues to have . . . urinary incontinence," and that his symptoms "have become more prominent for the past 4 to 5 weeks."  (AR at 320-21).  On April 6, 2017, Plaintiff again reported "fecal [and] urinary incontinence" to Dr. Teacher.  (AR at 346).  On May 19, 2017, Plaintiff's bladder and bowel issues were reportedly "resolved."  (AR at 374).  However, Plaintiff complained of bowel and bladder incontinence again on August 18, 2017.  (AR at 383).

On March 8, 2018, Plaintiff still suffered from persistent bowel and bladder incontinence.  (AR at 376).  Plaintiff reported bladder and bowel incontinence again at his April 26, 2018 visit.  (AR at 378).  Dr. Deckey recommended surgery for some of Plaintiff's other symptoms, but specified that "a lot of his neurologic symptoms may be stemming from his myelopathy and may not improve with surgery.  This is especially true regarding the bowel and bladder incontinence."  (AR at 378).  On August 2, 2018, Plaintiff reported to Dr. Deckey that his bladder incontinence remains "consistent."  (AR at 364).  On May 25, 2018, Dr. Deckey noted that Plaintiff continued to have bowel or bladder incontinence.  (AR at 370).  Dr. Deckey recommended surgical intervention, which Plaintiff had on May 30, 2018.  (AR at 371-73).  On May 30, 2018, Dr. Deckey performed a C3 to T1 posterior spinal fusion with left C7-T1 and C6-7 laminoforaminotomy for nerve root decompression.  (*Id.*).

At the hearing on October 23, 2018, Plaintiff testified that his bowel and bladder incontinence issues are still a daily challenge.  (AR at 43).  For example, he stated that he really has to "gauge" drive times based on his

incontinence and that he cannot drink a full water or he would be "running to the bathroom or . . . pee on [himself]." (AR at 44). Plaintiff explained that he had incontinence issues before his first surgery, but that it got progressively worse and he now wears a diaper. (AR at 45, 54).

While the ALJ recognized that Plaintiff "described suffering from incontinence," he found "little evidence in the form of diaries or reports to confirm the frequency of alleged episodes of incontinence." (AR at 22). The ALJ also noted that treatment notes from May 19, 2017 indicate that Plaintiff's bowel and bladder diagnoses were "resolved" after his August 24, 2016 surgery. (*Id.*). However, Plaintiff's incontinence returned between May and August of 2017 and remained an issue up to the administrative hearing. The ALJ failed to discuss these post-May 2017 records and Plaintiff's testimony regarding incontinence. The Court cannot say that the ALJ's omission of incontinence as a vocational limitation is supported by substantial evidence where it is not clear that the ALJ considered all the relevant evidence and testimony.

**2. Transferrable Skills**

Plaintiff next contends the ALJ failed to properly address transferrable skills. (ECF No. 15-1 at 18-20). Specifically, he argues the ALJ did not identify transferable skills supported by Plaintiff's past work and did not identify a significant range of work.[3] (*Id.*). Plaintiff also contends the

---

[3] Defendant contends that Plaintiff waived this argument by failing to raise it at the hearing. (ECF No. 16 at 7). Plaintiff did not challenge the VE's list of transferable work skills at the administrative hearing or on appeal with the Appeals Council. (AR at 63, 256-60). Ninth Circuit authority on waiver is limited to conflicts between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). *See Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017) (as amended); *see also Lamear v. Berryhill*, 865 F.3d 1201, 1206 (9th Cir. 2017). This issue differs from Ninth Circuit waiver cases because it deals with transferable work skills acquired at a claimant's past relevant work. The Supreme

ALJ failed to identify a significant range of work and jobs which Plaintiff can perform given his limitations. (*Id.* at 20-23).

When an ALJ determines a claimant cannot return to past relevant work at step four, the burden shifts to the Commissioner to establish the claimant is capable of performing other substantial gainful work at step five. B*ray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1223 (9th Cir. 2009). In making this determination, the ALJ must first determine whether the claimant's exertional limitations by themselves merit a finding of disability. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1116 (9th Cir. 2006). If they do not mandate a finding of disability, then the ALJ has the option of calling a VE to testify on the existence of jobs in the national economy that Plaintiff is capable of performing. *Tackett v. Apfel*, 180 F.3d 1094, 1100-01 (9th Cir. 1999). Claimants of advanced age with a high school education or more, like Plaintiff, with non-transferable work skills who are limited to sedentary work are considered disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 2, 201.00(d). However, that same claimant is not considered disabled if he has transferable work skills. *Id.*

Transferable work skills are "skills that can be used in other jobs, when the skilled or semi-skilled work activities [the claimant] did in the past can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work." 20 C.F.R. § 404.1568(d)(1). Social Security Ruling 82-41 specifies that a skill "is knowledge of a work activity which requires the exercise of significant judgment that goes beyond the

---

Court has held that "[c]laimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues." *Sims v. Apfel*, 530 U.S. 103, 112 (2000). Accordingly, Plaintiff did not waive this argument.

carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn)." SSR 82-412, 1982 SSR LEXIS 34, at *4. A transferrable skill "is practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner." *Id.*

"The claimant is in the best position to describe just what he . . . did in [past relevant work], how it was done, what exertion was involved, what skilled or semiskilled work activities were involved, etc." *Id.* at * 11. "Neither an occupational title by itself nor a skeleton description is sufficient. If the claimant is unable to describe [past relevant work] adequately, the employer, a coworker, or a member of the family may be able to do so." *Id.*

The ALJ found, based on the VE's testimony, that Plaintiff had the following transferrable work skills from his past job as a daily operations manager at a bookstore for the University of Phoenix: resolve customer complaints; assist customers with finding merchandise, assist with service issues, plan and prepare work schedules, paperwork, and financial documents; supervise employees, prepare, record and operate daily transactions, and handle orders and returns. (AR at 23-24, 62-63).

At the administrative hearing, Plaintiff testified that he was the "operations manager" at a bookstore on a satellite campus for the University of Phoenix. (AR at 60). The VE likened this position to a retail manager, which qualifies as a skilled occupation. (AR at 24, 60). Plaintiff explained that in his position he had "budgets to keep" or "attend to" and that he managed the "daily operations of the bookstore." (*Id.*). Plaintiff confirmed to the VE that he was essentially a "retail manager except . . . only dealing with books." (AR at 61).

Plaintiff contends that he did not work with customers, learn service issues, or plan and prepare work schedules at his job in the bookstore. (ECF No. 15-1 at 20). Rather, Plaintiff explains that he used "a computer to provide book orders." (ECF No. 17 at 9). Plaintiff's testimony did not demonstrate that he resolved customer complaints, assisted customers with finding merchandise, assisted with service issues, planned or prepared work schedules, or supervised employees. (AR at 60-61). Additionally, while Plaintiff did say that he was like a retail manager, he specified that he was more like an operations manager and that he was only dealing with books. (AR at 61).

Based on the foregoing, there is insufficient evidence that Plaintiff acquired transferrable skills relating to customer service, supervision of employees, preparation of work schedules, or assistance with service issues. In light of this finding, the Court cannot determine whether the ALJ identified a significant range of work or provided jobs which Plaintiff can perform given his limitations.

### 3. Remand for Further Proceedings

The law is well established that the decision whether to remand for further proceedings or simply to award benefits is within the discretion of the Court. S*ee, e.g., Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990); *McCallister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989); *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). Remand for further proceedings is warranted where additional administrative proceedings could remedy defects in the decision. *See, e.g., Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984); *Lewin*, 654 F.2d at 635. When error exists in an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or

exploration." *INS v. Ventura*, 537 U.S. 12, 16 (2002) (citations and quotation marks omitted); *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004). Accordingly, this case should be remanded for further administrative action consistent with the findings presented herein.

### III.  CONCLUSION

Based on the foregoing, the Court **GRANTS** Plaintiff's motion for summary judgment and **DENIES** the Commissioner's cross-motion for summary judgment. **IT IS HEREBY ORDERED** that this case be **REMANDED** for further administrative action consistent with the findings presented herein. The Clerk of Court is instructed to enter judgment accordingly.

**IT IS SO ORDERED.**

Dated:   March 22, 2021

Hon. Mitchell D. Dembin
United States Magistrate Judge